UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TYRONE HILSON,

                    Plaintiff,

         v.                                          **DECISION AND ORDER**
                                                      12-CV-1068S
CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,[1]

                    Defendant.


         1.      Plaintiff, Tyrone Hilson, challenges the determination of an Administrative

Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act

("the Act"). Hilson alleges that he has been disabled since June 9, 2009.

         2.      The Commissioner of Social Security ("Commissioner") denied Hilson's initial

application for benefits, and as result, he requested an administrative hearing. He received

that hearing before ALJ William Weir on April 7, 2011. The ALJ considered the case *de

novo*, and on August 26, 2011, issued a decision denying Hilson's application. Hilson's

request for review with the Appeals Council was denied, prompting him to file the current

civil action on November 2, 2012, challenging Defendant's final decision.[2]

         3.      On August 5, 2013 Hilson and the Commissioner both filed a motion for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

---

[1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, under Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is substituted for former Commissioner, Michael J. Astrue, as the defendant in this suit.

[2]The ALJ's August 26, 2011 decision became the Commissioner's final decision when the Appeals Council declined to review Hilson's claim.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). This Court must, however, "independently determine if the Commissioner's decision applied the correct legal

standards in determining that the plaintiff was not disabled." Valder v. Barnhart, 410 F. Supp. 2d 134, 138 (W.D.N.Y. 2006). "Failure to apply the correct legal standards is grounds for reversal." Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8.      In this case, the Commissioner made the following findings: (1) Hilson has
not engaged in substantial gainful activity since his onset date (R. 13.);[3] (2) Hilson's back
pain is a severe impairment  (id.); (3) Hilson does not have an impairment or combination
of impairments that meets or medically equals the criteria necessary for finding a disabling
impairment under the regulations (id.); (4) he retains the residual functional capacity
("RFC") for the full range of sedentary work  (id.), but he cannot perform any of his past
relevant work (id.); and last (5) Hilson could perform work that exists in significant numbers
in the national economy. (R. 17).

9.      Hilson argues that the ALJ erred by failing to (1) consider his impairments in
combination, (2) classify his mental impairments as meeting the requirements of the listing
at 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 112.05(D), and (3) consider his
obesity.

10.     Hilson's argument with respect to the first objection appears to be that
because the ALJ did not find other impairments – including alleged neck, ankle, and knee
conditions, as well as his intellectual functioning – to be severe, he must not have
considered them at all. But, first, this proposition is simply not true. The ALJ dutifully
recounted the medical evidence, and was clearly aware of these other alleged
impairments which were addressed at the hearing. The ALJ further notes that he
"considered all symptoms and the extent to which these symptoms can reasonably be
accepted as consistent with the objective medical evidence." (R. 13.) Further, his decision
to not classify those impairments as "severe" does not constitute reversible error. As the
Commissioner notes, Hilson himself said that his knee and ankle were "healed" and that

---

[3]Citations to the underlying administrative record are designated "R."

he walked two miles per day. (R. 311.) Nor is there any evidence to suggest that his mental impairment is severe or that it would significantly affect his ability to perform sedentary work. Although he scored below average on an IQ score in October of 2009, the evidence here demonstrates that he could understand and follow directions in a work setting, relate adequately to a supervisor, and make work-related decisions. (R. 376.)

This contention bleeds into Hilson's next objection – that his mental impairment satisfied the requirements of Section 112.05(D), which, if true, would automatically entitle him to benefits.

11.    This argument fails for several reasons. First, Listing 112.05(D) is applicable only to children. Second, even considering Hilson's objection under the correct Listing – that for adults – at Section 12.05, this Court finds that the ALJ did not err. The Listing at Section 12.05 includes four definitions for mental retardation. Before qualifying under any of these definitions, a claimant must first show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" prior to age 22. 20 C.F.R. § 404, Subpart P, App. 1. Only once the claimant has made this showing, may he then attempt to satisfy one of the four sets of criterion listed in paragraphs A through D, demonstrating a sufficiently severe impairment. Because Hilson argues that his IQ score of 65, coupled with back pain, renders him disabled, it appears that Hilson believes that the ALJ should have found him impaired under paragraph C.

12.    To be found disabled under paragraph C, the claimant must have a full-scale IQ score between 60 and 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P,

App. 1, Section 12.05(D).

13.     Hilson was assigned a full-scale IQ score of 65 in October of 2009. Although Hilson does not cite evidence or even argue that he had subaverage general intellectual functioning before the age of 22, IQ tests can create a rebuttable presumption of a fairly constant IQ throughout a person's life. Santiago v. Astrue, No. 07–CV–6239, 2008 WL 2405728, *4 (W.D.N.Y. June 11, 2008) (citing Hodges v. Barnhart, 276 F.3d 1265 (11th Cir.2001)) (finding that the plaintiff met the criteria for mental retardation despite not being IQ tested until after age 22). As this Court has previously found, "absent evidence of a change in [Plaintiff's] intellectual functioning, it is appropriate to assume that the results of an IQ test administered after age 22 accurately reflect[] [the plaintff's] IQ prior to age 22." Mendez v. Astrue, No. 11-CV-276S, 2012 WL 3095587, at *3 (W.D.N.Y. July 30, 2012). But while this demonstrates subaverage intellectual functioning, it does not demonstrate that Hilson lacked "deficits in adaptive functioning." Indeed, as the Second Circuit has aptly observed,  "[T]here is no necessary connection between an applicant's IQ scores and [his] relative adaptive functioning." Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012)

14.     "Adaptive functioning" refers to a claimant's "ability to cope with the challenges of ordinary everyday life." Id. (internal quotation marks and alteration omitted). Id. Therefore, if the claimant can "satisfactorily navigate activities such as living on [his] own, taking care of  children without help sufficiently well that they have not been adjudged neglected, paying bills, and avoiding eviction, [he] does not suffer from deficits in adaptive functioning." Id. (internal quotation marks and alterations omitted). In short, "the regulations recognize that persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job, and are therefore not disabled, if their adaptive functioning is sufficiently intact." Id. (internal quotation marks omitted).

In this respect there is no evidence suggesting that Hilson suffers from such deficits. To the contrary, the record sufficiently establishes that "the claimant can satisfactorily navigate" not only his own life, but those of his children as well. See id.  As the ALJ noted, Hilson is able drive, and he enjoys going to car shows and drag races. Perhaps more importantly, Hilson testified that he took care of his own personal hygiene, cared for his five children, cooked, did housework, shopped, attended church, and generally maintained his single family home for him and his five children. In fact, Hilson does not even argue that he suffered from deficits in adaptive functioning, and he points to no evidence suggesting as much. Accordingly, the ALJ did not err by failing to find that his mental impairments did not qualify him for benefits under the mental-retardation listing.

15.   Last, Hilson contends that the ALJ failed to consider his obesity.  But, as an initial matter, Hilson points to no evidence suggesting that his obesity should be considered an impairment. And this Court must be "[m]indful that a lack of evidence of severe impairment constitutes substantial evidence supporting a denial of benefits." Martin v. Astrue, 337 F. App'x 87, 89 (2d Cir. 2009) (rejecting contention that obesity should have been considered a severe impairment because plaintiff's obesity was mentioned "only four times" and there was "no evidence of a severe impairment limiting work ability"). Nor did Hilson allege in his application that obesity kept him from work. (See R. 120.)

In any event,"[w]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." Yablonski v. Comm'r of Soc. Sec., No. 6:03–CV–414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008) (Treece, M.J.); see also Cruz v. Barnhart, No. 04 CIV 9011 (GWG), 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) ("[T]here is no obligation on an ALJ to single out a claimant's obesity for discussion in all

cases"); <u>Guadalupe v. Barnhart</u>, No. 04 CV 7644 HB, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005). Here, the ALJ did not explicitly consider the effects of obesity, but he largely adopted the limitations found by the reviewing doctors. And there can be no dispute that the ALJ was aware of his weight, which was discussed at the hearing. Indeed, the ALJ's ultimate conclusion aligns with the limitations described by Dr. Kathleen Kelley, and he assigns Hilson an RFC that is limited to sedentary work. Remand is therefore not warranted. <u>See, e.g.</u>, <u>Skarbek v. Barnhart</u>, 390 F.3d 500, 504 (7th Cir. 2004) (remand not warranted because the plaintiff "does not specify how his obesity further impaired his ability to work," and because "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [the plaintiff's] obesity").

16.    This Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence; it will therefore grant Defendant's Motion for Judgment on the Pleadings, and deny Plaintiff's motion for the same relief.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated:   March 23, 2014
         Buffalo, New York

> /s/William M. Skretny
> WILLIAM M. SKRETNY
> Chief Judge
> United States District Court